### 11590. STURDIVANT *v.* THE STATE.

BLOODWORTH, J. 1. The demurrer to the indictment in this case (which charged the offense of personating another, under section 710 of the Penal Code of 1910), was properly overruled.

2. The check which the bank cashier swore that the · accused signed and presented to him for payment was properly admitted in evidence.

3. There was ample evidence to support the verdict.

*Judgment affirmed. Broyles, C. J., and Luke, J., concur.*

DECIDED JULY 13, 1920.

Indictment for personating another; from Harris superior court — Judge Howard. May 3, 1920.

The indictment charged Alonza Sturdivant with the offense of felony, for that on January 29, 1918, in Harris county, he unlawfully, falsely, and fraudulently personated another, " to wit, that he did then and there represent himself to the Bank of Chipley and to W. B. Wisdom, cashier of said Bank of Chipley, that he, the said Alonda Sturdivant, was the person of Alonza Gholston, a son of Tom Gholston, with the intent of fraudulently obtaining money from said Bank of Chipley and said W. B. Wisdom, cashier, the said false and fraudulent representation as aforesaid being with the intention of fraudulently procuring and obtaining money in the sum of sixty-five dollars from said Bank of Chipley and said W. B. Wisdom, cashier, which said representations were false and fraudulent and made with the intent to cheat and defraud said Bank of Chipley and said W. B. Wisdom, cashier, contrary to the laws of said State," etc. The defendant demurred on the grounds: (1) The indictment fails to set out any crime under the laws of this State. (2) It does not set out with sufficient certainty the charge of personating another; it fails to set out the manner and details of any transaction showing fraudu-

lent intent; it fails to set out any special manner in which false representation or personating another was done by issuing a check or otherwise; and the defendant was not, under the indictment, placed on notice of the facts or circumstances relied on for conviction.

On the trial W. B. Wisdom testified, that on January 29, 1918, he was cashier of the Bank of Chipley and saw Alonza Sturdivant, the defendant, sign a certain check on the Bank of Chipley; the witness referring to a check exhibited to him and later introduced in evidence, which was for $65 and was signed: "Lonzy Gostie." The witness further testified: "I had a conversation with the defendant. I had seen the negro around Chipley for a long time, and thought I knew him, and he wrote that check and said his name was Alonza Gholston. I said: 'You are not Alonza Gholston; you are Alonza Sturdivant.' I says, 'I know Judge Sturdivant, and know your folks.' I says, 'You live out here at Mr. Willie Williams', or live on Mr. Willie Williams' land.' He says, 'No sir; I am Tom Gholston's boy, and live here with Rube Collier.' So I stepped out from behind the counter, and thought I would get outside there to some other darkeys out there and ask these negroes if this was Alonza Sturdivant. I didn't think I was mistaken in the negro, but he stood up and told me so point blank that he was another darkey that I thought may be I might be mistaken. So I walked out right to the next door, . . and some darkeys were standing there, but before I could ask them and get back this darkey was gone. He didn't wait to get his change. . . He presented the check to the bank; . . he just walked up to the window and asked for the money, and the check was written out, and he just signed it, and wanted to get the money on it; and right after that time was when I had my conversation with him. I didn't give him any money. . . . Mr. Jordan . . filled out the check. Mr. Jordan occupied the position of assistant cashier." The witness testified that he knew Tom Gholston, a negro who prior to that time had a checking account at the bank, and that Alonza Sturdivant had an account at the bank in a previous year. "I told the solicitor that Gholston, the man whose name is signed there, did have an account with the bank prior to that. He did not have any money that day. He had no account at all. The records show . . he drew

it out January 9th, . . twenty days prior to the time this check was written."

The defendant in his statement at the trial said that he asked Alonza Gholston to lend him $65, and Alonza gave him permission to sign his (Alonza Gholston's) name to the check and get it, and he (the defendant) did so. The defendant further said: " I told Mr. Wisdom, when he said, ' That ain't Alonza Gholston, that is Alonza Sturdivant,' I told him I was writing the check on Tom Gholston's son that lived out at Mr. Collier's. He just misunderstood me to say that I was Alonza Gholston. I wouldn't have said that to him and knowing me personally. I had been knowing Mr. Wisdom eight or ten years."

One of the grounds of the motion for a new trial was that the court erred in admitting in evidence the check referred to, over the objections that it was " irrelevant, immaterial, and prejudicial," and that under the indictment it was inadmissible.

*J. B. Burnside, McLaughlin & Jones,* for plaintiff in error.
*C  F. McLaughlin,* solicitor-general, contra.